IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 2, 2016

**IN RE ETHAN R.**

**Appeal from the Circuit Court for Shelby County**
**No. CT-003467-13       Jerry Stokes, Judge**
_____

**No. W2016-00201-COA-R3-CV – Filed August 8, 2017**
_____

Mother appeals judgment holding her in criminal contempt of court, contending that the court lacked jurisdiction to enforce the order as to which she was found in contempt, that she was not given the notice required by Tennessee Rules of Criminal Procedure 42(b), and that she was improperly served with the contempt petition. Upon a thorough review of the record, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Stephen W. Pate, Murfreesboro, Tennessee, for the appellant, Shiau-Jiuan Wang.

W. Ray Glasgow, Memphis, Tennessee, for the appellee, Michael Eugene Rowland.

**OPINION**

**I.      FACTS AND PROCEDURAL HISTORY**

This case and these parties come before the court for a second time. Facts pertinent to the instant appeal are set forth in the opinion entered in the first appeal:

> This appeal arises out of a dependent and neglect proceeding initiated on December 27, 2011, by Shiau-Jiuan Wang, ("Mother"), the mother of Ethan R., in Shelby County Juvenile Court. Mother and Michael Rowland ("Father"), Ethan's father, were divorced in 2005 in Shelby County Circuit Court.

The petition alleged that on December 23, 2011, Mother, who lived in Shelby County at the time, had been contacted by emergency room personnel at the Helena, Arkansas, Regional Medical Center and told that Ethan had been treated at the hospital for repeated vomiting and stomach pain caused by ingesting 8-15 methadone pills while he was in the custody of Father, and that Ethan would not be released to Father. The petition further alleged that Mother drove to Arkansas and brought Ethan to Shelby County, and that Father called her on December 26 advising that he was coming to pick Ethan up to exercise his scheduled parenting time. Mother prayed that Ethan be brought within the protective custody of the court pending an investigation and adjudication of Ethan's custody, that Father be required to submit to various drug screens, and that his parenting time be supervised. The temporary order was denied, and a hearing was held on the petition before a magistrate on February 3, 2012. On that day, the magistrate issued Findings and Recommendations that the petition be sustained; that Ethan be declared dependent and neglected as a result of having ingested methadone pills; that custody be awarded to Mother; and that Father be enjoined from having any contact with Ethan. The Recommendations were adopted, ratified, and made the order of the court by the Juvenile Court Judge.

* * *

On June 13 Father filed a Motion for Injunctive Relief asserting, *inter alia*, that Mother had advised him of her intent to relocate to Kentucky with Ethan, and seeking an order enjoining her from relocating with Ethan. On June 18 the Magistrate heard the motion and entered Findings and Recommendations, which were subsequently ratified and adopted by the Juvenile Court Judge in an order denying Father's motion. Father then filed a petition opposing Mother's relocation and seeking a change of custody.

After proceedings relating to several motions not germane to the issues in this appeal, the Magistrate held a hearing on June 30, 2013, on Mother's petition to have Ethan declared dependent and neglected and Father's petition for custody. The Magistrate entered Findings and Recommendations on July 30, *inter alia*, dismissing both petitions; the Recommendations were ratified by the Juvenile Court Judge. Father appealed to the Circuit Court and, upon his motion, the case was assigned to Division VI, the court which heard the parties' divorce action.

On January 23, 2015, Mother filed a motion to dismiss Father's appeal and for further relief asserting, *inter alia*, that the circuit court did not have subject matter jurisdiction.[2] Father responded and the court held a

hearing on April 10 on both motions; the court heard argument on Mother's jurisdictional motion first and, after orally overruling the same, proceeded to hold an evidentiary hearing on the dependency and neglect petition, as well as Father's opposition to Mother's relocation and for a change of custody. On May 29 the court entered an order denying Mother's motion; the court also entered what was styled a "Final Order" on the appeal from Juvenile Court in which the court, *inter alia*: held that there was not sufficient evidence that Ethan was dependent and neglected; held that Mother had a reasonable purpose in relocating to Kentucky and that the relocation was not vindictive; denied Father's petition after holding that there were no bases to change custody of Ethan from Mother to Father; and set a new parenting schedule.

[2] In pertinent part, Mother's motion stated:

> 33. In the instant case, an "interrupting event" did occur when Juvenile Court dismissed Mother's petition for dependency and neglect at a June 20, 2013 hearing followed by July 30, 2013 Order dismissing (1) Mother's December 27, 2011 petition for dependency and neglect, (2) Mother's pro se motion for change of venue, (3) Father's motion for contempt and (4) Father's intervening petition for custody. Juvenile Court thereby lost its original exclusive dependency and neglect jurisdiction such that the within appeal for a de novo hearing before this Court must be dismissed.

> 34. It is submitted that, as a result of the above intervening event dismissing Mother's original dependency and neglect petition as well as Mother's pro se motion for change of venue, Father's motion for contempt and Father's intervening petition for custody, dependency and neglect jurisdiction of Juvenile Court was terminated pursuant to the provisions of TCA § 37-1-103 (c) and the In re D.Y.H. case.

*In re Ethan R.*, No. W2016-00201-COA-R3-CV, 2017 WL 957825 at *1-2, (Tenn. Ct. App., March 10, 2017) (foonote omitted) (*perm. app. denied* July 19, 2017).

The parenting schedule adopted by the court granted Father parenting time with Ethan on the second weekend of each month, during spring and fall breaks, the first weekend in June until the first Sunday in July, Thanksgiving on odd-numbered years, and Christmas on even-numbered years. Mother immediately filed a motion to stay the parenting time provisions in the final order, which was denied by order entered on June 22, 2015, *nunc pro tunc* to May 29. Mother filed the notice initiating the first appeal on June 25, raising two issues: (1) whether the trial court erred in failing to dismiss the case for lack of jurisdiction, and (2) if not, whether the trial court erred in failing to transfer this case to the State of Kentucky based upon improper venue.

3

On August 26, 2015, while the appeal was pending, Father filed the contempt petition that gives rise to the instant appeal. The petition alleged that Mother had not allowed Father to see or contact Ethan after his summer court-ordered visitation, and requested, *inter alia,* that a hearing be held "to determine whether [Mother] is in contempt of the Court's orders and should be punished as provided by law, including, but not limited to confinement in jail for civil contempt until purged of contempt and criminal contempt pursuant to Tennessee Code Annotated § 29-9-102." The Fiat included in the petition and signed by the court set a hearing on the petition for September 11, 2015. There is no certificate of service on the petition in the record.

At the September 11 hearing, Father and his counsel were present; Mother failed to appear in person or by counsel. An order was entered on September 14 reciting that the case had been called for hearing on September 11, and that Mother did not appear; the case was reset to October 5. Included in the order was the following:

> The Court . . . commands [Mother] to be present and before this Court on that date and answer why she should not be found in contempt for refusing to follow this Court's orders. Failure to appear at the date and time proscribed could result in sanction and punishment as provided by law, including, but not limited to, monetary judgment including litigation costs and an award of attorneys fees, and confinement in jail for civil contempt.

The certificate of service stated that a copy of the order was sent to Mother and to the Guardian *ad Litem* and was signed by Father's attorney on September 14.

Also included in the record is a separate notice signed by the circuit court clerk on September 14, addressed to Mother, informing her that "the hearing on the Petition for Citation of Contempt is hereby set for 10:00 a.m. on Monday, October 5, 2015," and a return on the notice signed by "Christi Fuller, Paralegal" attesting that on September 15 the notice was "executed on [Mother] at her place of employment, American Greetings." The record also contains a photocopy of a FedEx proof of delivery receipt dated September 15, showing that a FedEx package was delivered to Mother's place of employment and signed for by "D. Barzee" at American Greetings, 800 American Drive, Bardstown, Kentucky, at 12:10 p.m. on September 15; on the receipt Father's lawyer is identified as the Shipper, Mother is listed as the Recipient, and the delivery method required Mother's signature.

On October 1, 2015, Mother filed a document styled "Motion To Dismiss Petition For Citation of Contempt," asking that the petition be dismissed for insufficient service of process and that the court "vacate any default judgment and order issued." Of pertinence to the issues in this appeal, as grounds for the motion, Mother asserted:

4

1.  On September 9, 2015 after returning from an out of town trip after a long holiday weekend, Mother discovered a FedEx package left at front door which contains a copy of contempt petition filed by Father dated August 26, 2015 with a blank return receipt.

2.  On September 28, 2015, Mother received a phone call from Mr. Pate, he informed Mother about circuit court hearing on October 5, 2015. Mr. Pate only represents Mother in court of appeal and not representing mother in any circuit court litigation.

3.  As of today, Mother has not been served with any summons about Father's petition of contempt or received any court order.

Two exhibits are attached to the motion: (1) what is apparently a copy of the last page of a document, certifying that on August 26 Father's counsel served "a true and correct copy of the foregoing Notice of Setting" on Mother "via hand-delivery, electronic transmission, or United States Postal Service," with the "Officers Return" portion of the document not completed or signed; (2) a FedEx mailing label dated September 4, 2015, addressed to Mother at 106 Sandy Hill Court, Bardstown, Kentucky, from Father's Counsel. No hearing date was set on the motion.

Next appearing in the record is a Motion to Dismiss Petition for Injunctive Relief and Citation of Contempt filed by Mother on November 24, 2015. The motion contains the following unsworn statements relative to the issues in this appeal:

1.  On November 5, 2015, a Kentucky Nelson County sheriff came to mother's work place during work hour with a summon from Shelby County Circuit Court in Memphis Tennessee for petitions filed by Father.
2.  The summon was issued on October 5, 2015 but summon didn't reach Kentucky promptly until one month later with a court hearing date set on December 4, 2015 that Mother does not have 30 days as stated on summon to respond the lawsuit which violates T.R.C.P., Rule 12.01.
3.  In summon, it states that *"You are hereby notified that the attached Petition for Injunctive Relief and the Petition for Citation of Contempt being served"*, however the summon only includes a copy of Petition for Injunctive Relief which is in violation of T.R.C.P., Rule 4.04 that plaintiff shall furnish copies of summons and complaints.
* * *
6.  Tennessee Civil Rule Procedure 4.03 provides statue of completed service of process that *"the person serving the summons shall promptly make proof of service to the court and shall identify the person served and shall describe the manner of service"*. *"If the return receipt is signed by the defendant, or by person designated by Rule 4.04 or by statue, service on the*

5

*defendant shall be complete"* that Father's summon is not complete as return receipt is not signed by Mother.

7. This case came to your honorable court as father's appeal from Tennessee Juvenile Court dismissed Mother's dependent and neglect petition against Father and found Ethan is not dependent and neglect.

8. Tennessee Rules of Appellate Procedure Rule 13(b) states *The appellate court shall consider subject matter jurisdiction for reasons: (1) to prevent needless litigation, (2) to prevent injury to the public, and (3) to prevent prejudice to the judicial process* where reasons (1) and (3) are pertinent to current case.

9. Despite Mother's attorney challenge Tennessee Circuit Court's jurisdiction and subject matter jurisdiction under Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), an order was entered on May 29, 2015.

* * *

16. Mother's dependent and neglect petition was dismissed by Juvenile court in June 2013 that Tennessee jurisdiction has ended for followings:

a) TCA 37-1-103(c) states that Juvenile Court's continuing jurisdiction over the child in a dependent and neglect ends when petition is dismissed.

b) TCA 37-1-130 unless a child is determined to be dependent and neglected, no dispositional order may be made.

17. Father's appeal unto your honorable court does not confer any jurisdiction to Circuit Court as Juvenile Court continuing jurisdiction has ended.

18. Furthermore, because this is an appeal from Juvenile court for a dependent and neglect case, pursuant to TCA 37-1-159(b) and (c), when circuit court issues its order deciding the dependency and neglect appeal, it *"shall remand the case to Juvenile court for enforcement of the judgement rendered by the criminal court or circuit court"* that your honorable court should not retain any jurisdiction over the custody of Ethan regarding if it is for modification or enforcement.

19. TCA 36-5-3003(b)(1) also provides provision for transfer of custody cases should everyone moves out of issuing court which is what happens in current proceeding  that Mother respectfully requests your honorable court to transfer all custody matters to proper court in Ethan's home state, Kentucky.[1]

---

[1] The omitted paragraphs contain allegations based on Mother's apparent belief that Father was pursuing a Petition for Injunctive Relief, which was originally filed on December 31, 2014, rather than the contempt petition that gave rise to this appeal.  The Petition for Injunctive Relief was disposed of in the May 29, 2015 order that served as the basis of the first appeal.

No hearing date was set in the motion.

A hearing was held on the contempt petition on December 4, but Mother failed to appear.[2] On December 15 the court entered an order holding that "the actions of [Mother] rise to the level of criminal contempt, as she has willfully and intentionally violated the orders of this Court without just cause or excuse." The court sentenced Mother to ten days in jail, ordered Ethan's passport to be confiscated and delivered to the office of the Clerk of the Shelby County Circuit Court, and that Ethan not be allowed to leave the United States without the court's permission.

Mother filed a notice of appeal, and in due course this court entered an order staying execution of the contempt sentence pending review. Mother articulates the following issues for review:

> 1. Whether the trial court erred in failing to dismiss the case for lack of jurisdiction and improper venue.
>
> 2. Whether the trial court erred in finding Mother in criminal contempt of court based upon the failure of Mother to be properly notified pursuant to Tenn. R. Crim. Procedure 42.
>
> 3. Whether there was adequate service on the defendant pursuant to Rule 4.03, Tenn. Rules of Civil Procedure.

## II. ANALYSIS

### A. Subject Matter Jurisdiction and Venue

Mother argues the trial court lacked subject matter jurisdiction to enter the May 29, 2015 order of which she was held in contempt. In her brief, which was filed prior to the resolution of the first appeal, Mother acknowledges that the issues of jurisdiction and venue were raised in that appeal. That appeal was decided on March 10, 2017, and affirmed the trial court's holding that it had subject matter jurisdiction; the challenge to venue was determined to be moot. Inasmuch as those matters have been resolved, we consider whether jurisdiction to enforce the order exists; for the reasons set forth below, we have determined that it does.

---

[2] The record does not show if the hearing set for October 5 was held or not; the order under appeal states that the hearing on Father's petition was held on December 4. Paragraph 2 of Mother's November 24 motion acknowledges that the hearing was set for that date. There is no transcript of the December 4 hearing in the record.

Tennessee Code Annotated section 16-1-103 provides: "For the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code." The courts are specifically empowered to inflict punishments for contempt of court for the "willful disobedience or resistance of any . . . party . . . to any lawful writ, process, order, rule, decree, or command of such courts[.]" Tenn. Code Ann. § 29-9-102(3). Criminal contempt actions "preserve the power and vindicate the dignity and authority of the law and the court as an organ of society." *Baker v. State,* 417 S.W.3d 428, 436 (Tenn. 2013).

The issue presented here was also presented in *Miller v. Miller*, wherein this court addressed whether a court in Davidson County that entered a parenting plan in a divorce proceeding naming the mother the primary residential parent and establishing a residential parenting schedule had jurisdiction over a contempt proceeding initiated by the father after the mother relocated with the children to Wisconsin. *Miller v. Miller*, No. M2014-00281-COA-R3-CV, 2015 WL 113338 (Tenn. Ct. App. January 7, 2015). The court rejected the mother's insistence that the Tennessee court lost jurisdiction to adjudicate the petition for contempt, holding that "neither Wisconsin's involvement in this case, nor a finding that it is the home state of the parties' children negates the jurisdictional authority the Davidson County Circuit Court exercised to find Mother in contempt."[3] *Id*. at *6. The court has the power granted by statute to enforce its orders through the power of contempt, and we affirm the exercise of the court's authority.

Mother does not argue that the evidence does not sustain the finding that she was in contempt of court; consequently, we proceed to address the issues of notice and service of the petition.

---

[3] The court specifically noted that it was resolving only the question of jurisdiction to adjudicate the contempt petition, and not a motion to modify the parenting plan the father had also filed. The court also noted several Tennessee cases addressing the issue:

> In *Adams v. Cooper*, the Middle Section of this Court noted that "[o]ur supreme court has observed that a court which loses jurisdiction to modify custody 'seemingly' retains jurisdiction to enforce its unmodified custody order through contempt." *Adams v. Cooper*, No. M1999-02664-COA-R3-CV, 2000 WL 225573, at *7 n.11 (Tenn. Ct. App. Feb. 29, 2000) (citing *Marcus v. Marcus*, 993 S.W.2d 596, 603 n.13 (Tenn. 1999)). Moreover, in the recent decision of *Heilig v. Heilig*, we noted that even if a Tennessee court would no longer have jurisdiction to modify a child custody order, it could still enforce the order in a contempt proceeding when no other court had assumed jurisdiction to enter a contrary order. *Heilig v. Heilig*, No. W2013-01232-COA-R3-CV, 2014 WL 820605, at *5 (Tenn. Ct. App. Feb. 28, 2014).

*Miller*, 2015 WL 113338 at *6.

## B. Notice of Criminal Contempt Proceeding

Mother contends that the finding that she was in criminal contempt should be dismissed because the petition fails to comply with the notice requirement at Tennessee Rule of Criminal Procedure 42(b).[4] Mother argues that the notice is inadequate because:

> [T]he only reference made in the petition is that it reference [sic] that the defendant "be held in confinement in jail for civil contempt until purged of contempt and criminal contempt pursuant to Tennessee Code Annotated § 29-9-102." Said reference to "criminal" contempt is insufficient as it is the only reference wherein father alludes to the matter being criminal in nature and father prays for both civil and criminal contempt, with each prayer for contempt having difference [sic] consequences, which are not clearly defined wherein mother can articulate that she is facing a criminal penalty as a result of her alleged actions and not just enforcement of the order.

Father argues that the petition is "fully compliant" with Rule 42(b).

A defendant facing a criminal contempt charge must be "given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge." *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006). A succinct statement of the essential facts for adequate notice was set forth in *Long*:

> Essential facts are those which, at a minimum, (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment—not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature

---

[4] Tennessee Rule of Criminal Procedure 42(b) states in pertinent part:

> (b) Disposition on Notice and Hearing. A criminal contempt shall be initiated on notice, except as provided in subdivision (a) of this rule.
> (1) *Content of Notice.* The criminal contempt notice shall:
>     (A) state the time and place of the hearing;
>     (B) allow the alleged contemner a reasonable time to prepare a defense; and
>     (C) state the essential facts constituting the criminal contempt charged and describe it as such.

> (2) *Form of Notice.* The judge shall give the notice orally in open court in the presence of the alleged contemner or by written order, including an arrest order if warranted. The notice and order may also issue on application of the district attorney general, an attorney appointed by the court for that purpose, or an attorney representing a party in the case. …

of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous.

*Id.* at 13-14.

Upon our review, the petition complies with Rule 42(b) in that it contains the essential facts to apprise Mother that she is being charged with a crime that could result in her incarceration for her actions. Specifically, the petition alleges:

2. The final order entered on May 29, 2015 modified the parties' parenting plan to allow parenting time for Father on the second weekend of each month. The order also provided Father with parenting time during the summer, spring and fall breaks, and Thanksgiving and Christmas holidays.

3. For the monthly parenting time with Father to be accomplished, Mother was ordered to have the child at the Steak and Shake 24-hour restaurant at 8477 Highway 64, Memphis, Tennessee 38133, located near the Wolfchase Mall, on Friday by 11:00 p.m. and Father shall return him to Mother at the same location by noon the following Sunday.

4. Mother immediately filed a motion to stay the effect of parenting provisions of the final order pending appeal. An order denying this request was entered on June 22, 2015 nunc pro tunc to May 29, 2015.

\*\*\*

6. Mother has refused to allow Father to see or communicate with his child since Father returned him to Mother's care at the conclusion of his court-ordered visitation this summer on July 5, 2015. [Mother] likewise refuses to communicate with Father regarding the child with the exception of text messages advising she would not bring Ethan for the court-ordered visitation.

Father's prayer for relief stated in part:

WHEREAS, PREMISES CONSIDERED, Movant prays that:

A. Shiau-Jiuan Wang be summoned to appear and show why she should not be adjudged in contempt of Court and punished accordingly; and,

B. This Honorable Court hold a hearing pursuant to the Fiat below to determine whether Shiau-Jiuan Wang is in contempt of the Court's orders and should be punished as provided by law, including, but not limited to,

confinement in jail for civil contempt until purged of contempt and criminal contempt pursuant to Tennessee Code Annotated §29-9-102….

Finally, included as a part of the petition was a Fiat providing the time and date of the hearing and the following warning:

This petition places you in jeopardy of being found in Civil and Criminal contempt of this court's order(s). Each incident of contempt can result in incarceration in jail for contempt. As to Criminal contempt you have the rights of a criminally accused person including but not limited to, the right not to testify against yourself, the right to counsel, and the presumption of innocence.

We find that the petition complies with Tennessee Rule of Criminal Procedure 42(b).

### C. Service of the Petition

Mother contends that service of the contempt petition on her did not comply with Tennessee Rules of Civil Procedure 4.03 and 4.04; her reliance on these rules, however, is misplaced. A petition for contempt which seeks to enforce an existing court order is not a new action, but is a pleading filed in the course of an existing action, service of which is governed by Rule 5. *See Newman v. Newman,* No. W2004-01192-COA-R3-CV, 2005 WL 1618746, at *3 (Tenn. Ct. App. July 11, 2005); *Smith v. Israel,* No. M2011-00145-COA-R3-CV, 2011 WL 5184030, at *4 (Tenn. Ct. App. Oct. 31, 2011).

Tennessee Rule of Civil Procedure 5.01 requires that "[u]nless the Court otherwise orders . . . every pleading subsequent to the original complaint . . . shall be served upon each of the parties." The manner of service is set forth in Rule 5.02(1):

Service upon the attorney or upon a party shall be made by delivering to him or her a copy of the document to be served, or by mailing it to such person's last known address, or if no address is known, by leaving the copy with the clerk of the court. Delivery of a copy within this rule means: handing it to the attorney or to the party; or leaving it at such person's office with a clerk or other person in charge thereof; or, if there is none in charge, leaving it in a conspicuous place therein; or, if the office is closed or the person to be served has no office, leaving it at the person's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein. Service by mail is complete upon mailing. . . .

11

Rule 5.03 speaks to proof of service:

> Whenever any pleading or other paper is served under 5.01 and 5.02, proof of the time and manner of such service shall be filed before action is taken thereon by the court or the parties. Proof may be by certificate of a member of the Bar of the Court or by affidavit of the person who served the papers, or by any other proof satisfactory to the court.

The petition for contempt in the record before us does not include the page containing a certificate of service. In the motion to dismiss filed on October 1, however, Mother states:

> 1. On September 9, 2015, after returning from an out of town trip after a long holiday weekend, Mother discovered a FedEx package left at front door which contains a copy of contempt petition filed by Father dated August 26, 2015 with a blank return receipt.

Attached as Exhibit One to her motion is a copy of a certificate of service executed by Father's counsel, attesting that on August 26 "the foregoing Notice of Setting has been forwarded. . . via hand-delivery, electronic transmission, or United States Postal Service," on Mother and the Guardian ad litem.[5] In addition, Mother filed another motion to dismiss the petition on November 24, acknowledging that a hearing was set for December 4.

The record also shows that, after Mother failed to appear at the September 11 contempt hearing, the court entered an order on September 14, rescheduling the hearing to October 5; the order includes a certificate of service signed by Father's counsel. The record includes a notice signed and entered by the circuit court clerk, also on September 14, stating that delivery was made to Mother apprising her that "the hearing on the Petition for Citation of Contempt is hereby set for 10:00 a.m. on Monday, October 5, 2015." Next in the record is a copy of a FedEx receipt showing that a delivery was made to Mother at her place of employment and signed for by another employee.

"The certificate of service required by Tenn. R. Civ. P. 5.03 is *prima facia* evidence that the document was served in the manner described in the certificate and raises a rebuttable presumption that it was received by the person to whom it was sent." *Estate of Vanleer v. Harakas*, No. M2001-00687-COA-R3-CV, 2002 WL 32332191, at *8 (Tenn. Ct. App. Dec. 5, 2002) (citing *Orr v. Orr,* No. 01-A01-9012-CH-00464, 1991

---

[5] It is apparent that the Notice of Setting refers to the Fiat in the contempt petition in which the court instructs the clerk to "set this matter for hearing at 10:00 A.M. on the 11th day of Sept., 2015 and provide timely notice in proper form to all parties of interest." The court's signature on the Fiat is dated September 26.

Tenn. App. LEXIS 877, at *11 (Tenn. Ct. App. Nov. 6, 1991)). From the foregoing, we conclude that Mother was properly served with the petition and notified of the hearing, in accordance with Tennessee Rule of Civil Procedure 5.03.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. The order staying the execution of the sentence for contempt is vacated and the case remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE